Kenneth M. Steinberg, Steidl & Steinberg, Pittsburgh, Pa., for debtors.

John R. Wagner, Pittsburgh, Pa., for Dollar Bank.

Gregory A. Harbough, Pittsburgh, Pa., Trustee.

**In re Joel Z. ROSENTHAL and Rise D. Rosenthal, his wife, E & J Productions, E & J Travier Productions and Travier Productions, Debtor(s).**

Bankruptcy No. 89–02151.

Motion No. 89–5570–M.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 12, 1989.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is the motion for relief from stay filed on behalf of Dollar Bank seeking to exercise its rights to set off balances maintained by the Debtors in two accounts at the Bank. Debtors contend that the Bank may set off only the portion which would not improve its position from what it otherwise would receive on the first date of an insufficiency on or after 90 days before the filing of the bankruptcy petition. Debtors filed a Chapter 7 petition in bankruptcy on August 21, 1989. Among the debts listed are two to Dollar Bank: (1) an unsecured term loan of $2,283.09 and (2) an unsecured Visa account with a balance of $2,529.75. At issue in this case is only the unsecured term loan of $2,283.09.

The Debtors sought consumer credit counseling prior to filing bankruptcy. Dollar Bank agreed to allow the Debtors an opportunity to a reduced payment plan pursuant to its credit counseling agreement. Debtors made most of the agreed upon reduced payments, the last having been made on June 28, 1989. On August 11, 1989, the Debtors advised Dollar Bank that they would file bankruptcy imminently. As a result of that advice, Dollar Bank accelerated the entire balance due and owing and froze the Debtors' accounts on

August 16, 1989. On that date, the parties agree that the Debtors' accounts contained $1,811.86 and that the Bank was owed $2,285.74.[1] Thus, on August 16, 1989, the insufficiency was $473.88.

The question before the court is what loan balance should be used on May 23, 1989 to calculate the insufficiency. Ninety days prepetition, that is, May 23, 1989, the Debtors' accounts at Dollar Bank contained $118.60. Dollar Bank contends on that date it was owed $389.52, thus leaving an insufficiency of $270.92. Debtors argue that on May 23, 1989, it owed Dollar Bank $2,180.22, thereby leaving an insufficiency of $2,061.60.[2] The parties agree that May 12, 1989 is the relevant date for determining the original insufficiency. 11 U.S.C. § 553(b).

The court credits the Debtors' analysis and determines that the amount owed on May 23, 1989 was $2,180.22, leaving an insufficiency on that date of $2,061.60. In so deciding, the court has used an example furnished in COLLIER ON BANKRUPTCY 15th Edition ¶ 553.08(3) contained at pages 553–47 and 553–48. In that example, the Bank made an unsecured loan of $12,000.00 to the Debtor ninety days before the filing which was to be repaid in three monthly installments of $4,000.00. On the same date the Debtor had a bank balance of $2,000.00. The insufficiency on that date is listed as $10,000.00. Debtor made the first payment, reducing the debt to $8,000.00. However Debtor was able to make only $3,000.00 of the second installment. As a result, the Bank accelerated the debt and set off the $2,000.00 in the bank account. The insufficiency was determined to be $3,000.00, that is, the $5,000.00 still owed to the bank less the $2,000.00 in the bank account. The improvement in position was $7,000.00, that is, the $10,000.00 which was the insufficiency on the nineti-eth day pre-filing minus the $3,000.00 which was the insufficiency on the date of acceleration.

This case involves similar facts. In its brief, the Bank acknowledges that it consented to the Debtors' voluntary repayment plan pursuant to consumer credit counseling. The Bank's brief states:

> As a result, the Bank waived the Debtors' default and its right to accelerate the loan balance as long as the Debtors complied with the terms of the plan. The Bank received the first payment thereunder on April 25, 1988, and, with the exception of several missed monthly payments, payments continued through June 28, 1989. On the ninetieth day prepetition the amount *then due* the Bank was the amount the Debtors were in arrears on the plan, or $389.52. As a result the matured amount of the debt to which the Bank had a right of set-off on May 23, 1989 was $389.52.

In this statement, the Bank acknowledges that the Debtors were in default under their plan and that the loan balance could have been accelerated on or before May 23, 1989, the 90th day pre-petition. The Bank did not accelerate then, but chose to await a statement by the Debtors that bankruptcy was imminent even though Debtors owed the entire loan balance and were in default as of May 23, 1989.[3] The timing of the acceleration, that is, August 16, 1989, corresponded within a few days to the Debtors' deposit into its account of the proceeds of a bond Debtors had cashed. It was the bond proceeds which increased the account balance of the Debtors from $118.60 to $1,811.86. Thus, the appropriate loan balance as of May 23, 1989 was the entire amount owed to Dollar Bank on the personal loan or $2,180.22.

---

1. The Debtors have used the date of August 21 on which the amount owed was $2,283.09. The differences are de minimis, but the court credits the bank's position that the date of setoff should be considered the date that the administrative freeze was placed on the accounts. That date was August 16, 1989.

2. The court is aware that a two-cent discrepancy exists but uses the figures agreed to by the parties.

3. Debtors' monthly payments were to be $128.88 according to documents submitted by the Bank. Thus, by having a default of $389.52 on May 23, 1989, it is clear the loan payments were delinquent.

The improvement in position test was devised by Congress based on its concern that creditors, especially banks, that had mutual accounts with the debtor would "foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the 'insufficiency' to the detriment of the other creditors. Such a circumstance would not be improbable if banks were allowed to take advantage of any improvement in their position in the ninety days before bankruptcy. (Footnote omitted.) A bank with a continuing relationship with the debtor could not only anticipate the bankruptcy filing, but also pressure the debtor to increase its deposits, or reduce it short-term loans to the debtor." *Lee v. Schweiker*, 739 F.2d 870, 877 (3d Cir.1984). Such an event is what happened in this case. Although there is no evidence that the Bank made more than one short-term loan to the Debtors, the Bank clearly had an ongoing relationship with Debtors inasmuch as it had not only the personal loan but also a Visa account which the Debtor used through the Bank.

By making the freeze on August 16, the Bank improved its position over what it would have had on May 23 by $1,587.72, calculated as follows: on May 23, 1989 the insufficiency was $2,061.60; on August 16, 1989 the insufficiency was $473.88; subtracting the second figure from the first results in $1,587.72 which is the improvement in the Bank's position. Therefore the Debtors' objection to the motion for relief from stay must be sustained in part and the Bank must return $1,587.72 to the Debtors.

It should be noted that Debtors, rather than the Trustee, have standing to pursue this matter because the proceeds of the bank accounts have been exempted by the Debtors. *Lee v. Schweiker*, 739 F.2d 870, 873 n. 3 (3d Cir.1984).

An appropriate order will be entered.

## ORDER

And now, to-wit, this 12th day of October, 1989, for the reasons stated in the foregoing Memorandum Opinion, it is hereby ORDERED that the motion for relief from stay is granted in part and denied in part.

It is FURTHER ORDERED that Dollar Bank shall return to the Debtors $1,587.72 and may set off the remainder of the proceeds in the Debtors' accounts.